# Bluett *v.* The State.

## *Murder.*

(Decided May 15, 1907. 44 South. 84.)

1. *Indictment; Motion to Quash; Objections to Grand Jury.*—Under the provisions of sec. 5269, Code 1896, the fact that the commissioners, in selecting the grand jury, took only such persons as they wanted to act as grand jurors and refused to put upon the venire the names of many persons who were qualified jurors, and who, if the jury had been properly drawn, would have appeared on the grand jury venire, and the fact that the commissioners allowed their political preference to govern them in drawing the jury and selected the venire that was selected because they were favorable to a certain

candidate, is not available as a basis for a motion to quash an indictment returned by a grand jury so drawn.

2.  *Evidence; Criminal Law; Materiality.*—No offer having been made to show how the fact was material, evidence as to how often decedent had been seen with a pistol, was properly excluded.

3.  *Homicide; Evidence; Admissibility.*—Where it was shown that decedent fell with his hand in his bosom, when shot, it was proper to show the further fact as to whether he died with his hand in the same position.

4.  *Same; Threats.*—As showing the state of feeling between the parties it was permissible to show that defendant had made threats to kill deceased, although the evidence did not fix with exactness the time when the threats were made.

5.  *Same; Particulars of Former Difficulty.*—The particulars of a former difficulty between defendant and deceased are not admissible in evidence on a prosecution for murder.

6.  *Same; Threats; Conversation.*—Although it was proper to permit evidence of threats made by decedent to defendant, yet, the details of a conversation between a witness and decedent, and what advice witness gave decedent, was incompetent and properly excluded.

7.  *Same; Evidence; Character of Decedent.*—Since it was not the proper method of proving character, it was incompetent to ask of a witness the question, "Did you hear people generally say that decedent had the reputation of killing people?"

8.  *Same.*—Where it was shown that decedent arose from a table, placed his hand in his bosom and used threatening language, evidences that decedent was in the habit of carrying a pistol, and that defendant had been so informed, was admissible.

9.  *Trial; Argument of Counsel.*—In commenting upon the right of defendant to testify in his own behalf, and in referring to the difference between civil and criminal cases in this respect, the solicitor was properly permitted to state to the jury that the law in civil cases was that when a party died and his representatives were sued, a party interested in the result could not testify as to any transaction with deceased concerning matters involved in the controversy.

10.  *Homicide; Appeal; Review of Charges Rendered Inapplicable by Verdict.*—On a trial for murder, where the verdict and judgment is a conviction of manslaughter, charges given for the state as to murder in the first and second degree will not be considered on appeal.

11.  *Same; Self Defense; Belief in Peril.*—To justify the taking of human life in self defense, the circumstances must be such as to create in the mind of a reasonable man the reasonable belief that he is in imminent peril of losing his own life or of suffering great bodily harm.

12.  *Same; Instruction; Confused.*—An instruction correctly asserting the law although confused and tending to mislead, if given, will not constitute reversible error.

13.  *Same; Self Defense; Provoking Difficulty.*—One who is the aggressor in the difficulty cannot invoke the doctrine of self defense,

[Bluett v. The State.]

although the person killed, at or before the time he was shot, made a motion as if to shoot defendant.

14. *Same; Burden of Proof.*—One setting up self defense as a justification for killing another has the burden to show that there was a present, impending danger, real or so apparent as to induce the reasonable belief of danger to life or great bodily harm, from which there was no other probable means of escape. But a defendant is relieved of this burden where the evidence which proved the homicide also tends to prove its justifications.

15. *Criminal Law; Reasonable Doubt.*—A reasonable doubt is an actual and substantial doubt and not a mere possibility or speculation.

16. *Same; Instruction; Reasonable Doubt.*—Charges asserting that in whatever form the question of a reasonable doubt may be couched, and however it may be twisted by words, a reasonable doubt is no more than a reasonable doubt, and that in considering the case the jury should not go beyond the evidence to hunt up a doubt, nor entertain such doubts as were merely imaginary or conjectural; that a doubt, to justify an acquittal, must be reasonable and arise from an impartial investigation of the evidence; and that if, after considering all the evidence, the jury had a fixed conviction of the truth of the charge, then they were satisfied beyond a reasonable doubt,— are proper statements of the law.

17. *Homicide; Instructions; Self Defense.*—A charge asserting that if defendant was free from fault in bringing on the difficulty, he was under no duty to retreat unless he could have done so without increasing his danger or with reasonable safety was not erroneous for omitting one or more of the elements of self defense, as the charge dealt merely with the duty to retreat and was not an instruction requiring an acquittal or conviction.

18. *Same; Invading Province of Jury.*—A charge asserting that the language and conduct of deceased, taken in connection with his previous threats, are evidence that defendant was in danger, ought to be refused as invasive of the province of the jury.

19. *Same; Self Defense; Nature and Imminence of Danger.*—If the circumstances attending the killing were such as to justify a reasonable man in the belief that he was in danger of great bodily harm or death, and that he could not retreat without adding to his peril, and if defendant believed such to be the case reasonably, he would be justified in shooting, although he was not in actual danger, and retreat would not have added to his peril; and if a defendant acted under such circumstances the burden of showing that he was not free from fault in bring on the difficulty is upon the state.

20. *Same; Instructions; Character of Deceased.*—A charge asserting that if the jury believe from the evidence that deceased was of a violent dangerous character, they must look to such character in determining whether defendant, at the time he shot deceased, had a reasonable belief that an attack dangerous to his life, or which might produce great bodily harm, was threatened by deceased, is misleading and places too great emphasis on proof of character.

21. *Criminal Law; Trial; Instructions.*—Charges which sought merely to bring to the attention of the jury evidence which had been excluded, and which did not embody any instructions to the jury, are properly refused.

[Bluett v. The State.]

22. *Same; Argumentative Instructions.*—Instructions intended merely to offset or refute the arguments of the solicitor are properly refused.

23. *Homicide; Self Defense; Duty to Retreat.*—Where one may retreat without adding to his peril it is his duty to do so.

APPEAL from Walker Law and Equity Court.

Heard before Hon. THOMAS L. SOWELL.

Rich Bluett, alias, etc., was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

The defendant was indicted for unlawfully and with malice aforethought killing Scott Davenport, by shooting him with a gun or pistol. The defendant moved to quash the indictment: (1) Because the grand jury which found it was not drawn as required by law, in that the jury commissioners picked and selected such parties or persons over the county as they wanted to act as grand jury, and culled out and refused to take many names of those who were qualified jurors, and who, if the jury had been properly drawn, would have appeared on the list of the grand jury. (2) The grand jury was illegally drawn in this: that, instead of drawing the jury as required by law, they selected from the box a list of men whom they knew were favorable to James A. Huggins, a candidate running for nomination of said county in a primary election, and who at the time they drew said jury was also a candidate for sheriff of said county; all the commissioners who drew the jury at the time being supporters and in sympathy with Huggins. While the said jury commissioners furnished the names of 19 or 20 persons whom they claimed to have drawn as grand jury for said county, the said names so drawn and furnished by them were all in sympathy with said Huggins, being his supporters, except 1 or 2. The said Huggins in said primary election received about 1,200 votes, and the said Long, who was a candidate at said

[Bluett v. The State.]

election for the same office, received about 1,300 votes, saying nothing about 1,000 Republicans who would not vote in the primary election; but, as aforesaid, out of this great number of legally qualified persons to serve as jurymen, they selected as aforesaid a grand jury favorable to said Huggins, and that the selection of said grand jury shows on its face to have been fraudulently drawn.   (3 Sets out the names of the parties who were drawn, and alleges that the commissioners allowed their political preferences to govern them in the drawing of said jury, and selected such names as suited them politically.   (4) That said jury was fraudulently drawn, in that they were selected for political purposes, and because of their predeliction to a certain candidate.   (5) The said grand jury which found the indictment was illegally drawn, in that the said grand jury was not first drawn out of the jury box, but that said jury commissioners went into said jury box and selected such jury as they thought would be favorable to Huggins in his election.   (6) Because they were selected from a list of some kind or picked out of the box for a political purpose.   (7) Because of discrimination against the parties or persons in said county who did not and would not support said Huggins in his candidacy.

The exceptions to the evidence are fully stated in the opinion.

The solicitor in his closing remarks said: "Gentlemen, the mouth of the dead man is closed. He cannot testify in this case. The law is now more liberal towards defendants in criminal cases than it was in times past. The law at one time did not allow the defendant to testify as a witness in his own behalf, and the law in civil cases now is that, when a person dies and his representatives are sued, a party interested in the result of the case cannot testify as to any transaction had with

the deceased concerning matters involved in the controversy." The defendant objected to the remarks beginning with the statement, "The law in civil cases is," to the conclusion as above set out.

The state requested the following written charges, which were given:

Charges 1 and 6 relate to murder in the first and second degree.

"(2) The court charges the jury the apparent necessity which will excuse the taking of human life under the doctrine of self-defense, in cases of homicide, involved two considerations: First, the defendant himself must have entertained an honest belief in the existence of such necessity; and, second, the circumstances surrounding him must have been such as to impress a reasonable man under the same state of facts with the belief of his imminent peril and of the existence of an urgent necessity to take the life of the assailant as the only apparent alternative of saving his own life, or else of the preventing the infliction on defendant of grevious bodily harm.

"(3) The court charges the jury that, before the jury can acquit the defendant on the ground of self-defense, three essential elements must concur: First, the defendant must have been without fault in bringing on the difficulty, and must not be disregardful of the consequences in this respect of any wrongful word or act; second, there must have existed at the time, either really or so apparently as to lead a reasonable mind to the belief that it actually existed, a present, imperious, impending necessity to shoot in order to save himself from great bodily harm; and, third, there must have been no other reasonable mode of escape by retreat or by avoiding the combat with safety.

(4) The court charges the jury that, to make the plea

of self-defense available, the defendant must be free
from fault in bringing on the difficulty. If the defend-
ant was the aggressor, he cannot invoke the doctrine of
self-defense, even though the deceased, at or before the
time he was shot made a hostile motion as though he
was going to shoot the defendant; and whether the nec-
essity to take the life of the deceased was real or only
apparent, if brought about by the design, contrivance,
or fault of the defendant, he cannot be excused on the
plea of self-defense.

"(5) The court charges the jury, when the defendant
sets up self-defense in justification or excuse of a killing,
the burden of proof is on him to show the jury by the
evidence that there was a present impending danger,
real or apparent, to life or limb, or of grevious bodily
harm, from which there was no other probable means
of escape, unless the evidence which proves the homi-
cide proves also its excuse or justification."

"(6) The court charges the jury that a reasonable
doubt must be an actual and substantial doubt, not a
mere possibility or speculation. It is not a mere pos-
sible doubt, because everything relating to human af-
fairs and depending upon moral evidence is open to
some possible or imaginary doubt.

"(10) The court charges the jury that in whatever
form the question of a reasonable doubt may be couched,
and however it may be twisted by words, a reasonable
doubt is no more than a reasonable doubt, and that in
considering the case, you are not to go beyond the evi-
dence to hunt up doubt, nor must you entertain such
doubts as are merely imaginary or conjectural. A doubt,
to justify an acquittal, must be reasonable, and it must
arise from a candid and impartial investigation of all
the evidence in the case, and if, after considering all the
evidence, you can say that you have a fixed conviction

of the truth of the charge, you are satisfied beyond a reasonable doubt."

The defendant requested the following written charges, which were refused:

"(6) In this case, the proof shows that the killing was done in a sudden rencounter. The defendant sets up the defense that he did the killing in his own necessary self-defense. If you believe from the evidence introduced that at the time of the killing the defendant had the right as a reasonable man to believe, from the language and conduct of Scott Davenport, taken in connection with his previous threats, which are in evidence, that defendant at the time was in danger of death or great bodily harm, and that to have attempted to run out of the danger from the position in which he was at the time would have been dangerous to life and limb, and if the defendant actually believed he was in such danger, then he had the right to shoot Davenport in what he understood to be his necessary self-defense."

"(8) If the defendant was free from fault in bringing on the difficulty, he was under no duty to retreat, unless you believe he could have retreated without increasing his danger or with reasonable safety."

"(14) It is not necessary that there should be actual danger of death or great bodily harm in order to justify the taking of human life; but if the jury is satisfied from all the evidence that the circumstances attending the firing of the fatal shot were such as to impress the defendant at the time of the firing that it was necessary in order to prevent death or great bodily harm to his person, then the jury must acquit the defendant, unless they further believe that the defendant was not free from fault in bringing on the difficulty."

(16) This charge is identical with 6, with the following additional: "The defendant should have been free

from fault in bringing on the difficulty; but, under the facts as above stated, the burden should be on the state to show that defendant was at fault.

"(17) I charge you, gentlemen of the jury, that in this case, under the evidence, the burden is on the state to show that the defendant was not free from fault in bringing on the diffirulty."

"(21) The court charges you, gentlemen of the jury, that it is not necessary that there should be actual danger of death or great bodily harm in order to justify the taking of human life; but if the jury are satisfied, from all the evidence in this case, that the circumstances attending the firing of the fatal shot were such as to impress the defendant with reasonable belief that at the time of the firing that it was necessary in order to prevent death or great bodily harm to his person, then they must acquit the defendant."

"(23) If the jury believe from the evidence that, at the time Rich Bluett shot Scott Davenport, it was necessary to shoot, or that the circumstances were such as to create in his mind a reasonable belief that it was necessary to shoot, to save life or to prevent great bodily harm, and that there was no reasonable mode of escape without the risk of his life or of great bodily harm, they will find him not guilty."

(24) Similar to 23.

"(25) It is not necessary in this case, under the evidence, that Rich Bluett should have been actually and really in danger of great bodily harm, or that retreat would have actually and really increased his danger, in order for him to be justified in taking the life of Scott Davenport. He had the right to act upon the appearance of things. If the circumstances attending the killing were such as to justify a reasonable man in the belief that he was in danger of great bodily harm or

4 R

death, and that he could not have retreated without adding to his peril, and he honestly believed such to be the case, then he had a right to shoot Davenport in his own defense, although as a matter of fact he was not in actual danger, and retreat would not have endangered his personal safety, and the defendant had the right to interpret the conduct of Davenport in the light of the previous threat made by Davenport as shown by the evidence."

"(31) I charge you, gentlemen of the jury, that if, from all the evidence in this case, you entertain a reasonable doubt whether defendant, at the time the shot was fired, acted upon a good ground and reasonable belief that it was necessary to shoot to save himself from great bodily harm or death, or that he shot before such necessity arose, and could not have retreated without increasing his peril, or placing himself at a disadvantage, you should find him not guilty."

"(26) It is not necessary, under the evidence in this case, that the defendant should have been actualy in danger of death or great bodily harm at the time he killed Davenport, or that retreat would have really increased his peril, in order for him to have been justified in shooting Davenport. He had the right to act on the appearance of things at the time, taken in the light of all the evidence, and he had the right to interpret the conduct of Davenport in the light of any threats that the evidence proves Davenport to have made against defendant. If the circumstances attending the killing are such as to justify a reasonable man in the belief that he was in danger of great bodily harm or death, and that he could not have retreated without adding to his peril, and he honestly believed such to be the case, then he had the right to shoot Davenport in his own defense, although as a matter of fact he was not in actual dan-

[Bluett v. The State.]

ger, and retreat would not have endangered his personal
safety; and, if the jury believe that the defendant acted
under such conditions and circumstances as above set
out, the burden of showing that he was not free from
fault in bringing on the difficulty was on the state, and,
if not shown, they should acquit the defendant.

"(27) The burden is on the state to prove to the jury
from the evidence beyond a reasonable doubt that the
defendant was not free from fault in bringing on the
difficulty before the defendant will be precluded from
invoking the doctrine of self-defense."

"(29) If the jury believe from the evidence that de-
ceased was of a violent, dangerous, or turbelent char-
acter, they must look to such character in determining
whether the defendant, at the time he shot deceased, had
a reasonable belief that an attack dangerous to his life
or which might produce great bodily harm was threat-
ened by deceased."

"(35) While the court excluded from the jury any
statement that Davenport shot at defendant, yet the
court allowed the defendant to prove that Davenport
said he would kill defendant and that he tried to shoot
defendant.

"(36) I charge you that you cannot consider any of
the particulars of the previous difficulty between de
fendant and Davenport, but the court admitted the matter
ter testified to by one of the witnesses, that Davenport
said he shot at defendant, in connection with the re-
mainder of the statement of the same witness, that
deceased then said he would kill defendant if he hung
for it."

"(A) The court charges the jury, if defendant would
lessen his danger by retreating, he is not required to
retreat if there is actual apparent danger."

B, C, D, and E were charges attempting to rebut the

closing argument of the solicitor excepted to by the defendant.

Defendant was convicted of manslaughter and sentenced to four years and six months in the penitentiary.

No counsel marked for appellant.

ALEXANDER M. GARBER, Attorney General, for the State.—The motion to quash the indictment presents questions which are within the curative influence of section 5269, Code 1896.—*Shirley v. The State*, 144 Ala. 25; *Rogers v. The State*, Ib. 32. The threats of defendant were admissible.—*Meyers v. The State*, 62 Ala. 599; *Spraggins v. The State*, 139 Ala. 93. The details of the difficulty were not admissible.—*Sanford v. The State*, 143 Ala. 78.

SIMPSON, J.—The defendant in this case was indicted for the crime of murder in the first degree, and was convicted of manslaughter in the first degree.

There was no error in the action of the court in overruling the motion to quash the indictment. The objections set forth are not such as can be raised.—Code 1896, § 5269; *Rogers v. State*, 144 Ala. 32, 40 South. 572; *Shirley v. State*, 144 Ala. 35, 40, South. 269.

There was no error in sustaining the objection of the state to the question to the witness Will Thomas as to how often he had seen Scott Davenport with a pistol. No explanation was offered as to how the fact sought would be connected, so as to make it material.

There was no error in overruling the objection by defendant to the question, "Did he die with his hand in his bosom?" The witness had already stated that the deceased fell with his hand in his bosom, and no injury could accrue to the defendant by the testimony as to whether the hand remained in the same position till he

died.  It served to show the instantaneous effect of the shot.

The threats made by the defendant about killing Scott Davenport were properly admitted as tending to show the state of feeling between the parties.—*Meyers v. State,* 62 Ala. 599.

There was no error in overruling the motion to exclude the statement of the witness Mary Davenport as to the time when the threats were made against Scott Davenport by the defendant.  It was not necessary to fix the time with exactness.

The objection by the state to the question to the witness Mary Davenport as to the particulars of the former difficulty was properly sustained.—*Sanford v. State,* 143 Ala. 78, 39 South. 370, and cases cited.

The court ruled correctly in regard to the testimony of the witness Bush about threats made by deceased against defendant and communicated to him.  It was proper to allow testimony as to what the threats were, and that they were communicated to the defendant; but the details of the conversation, including what the witness said to said decedent and what advice he gave him, were properly excluded.  The witness testified to the threat and to the fact that he communicated the treat to the defendant.  That was all that was revelant.

The objections to the questions to the witnesses Moon and Cosby in regard to the particulars of previous difficulties were properly sustained.

There was no error in sustaining the objections to the question to the witness Moon, "Did you hear people generally say that Scott Davenport had the reputation of shooting people?"  That is not the proper way to prove character.

There was no error in sustaining the obection by the state to the question to the witness White as to whether

the deceased was in the habit of carrying a pistol.—
*Rodgers v. State,* 144 Ala. 32, 35. When, however, this
fact was sought to be connected with the further state-
ment that the defendant had been told that the deceased
carried a pistol about his person, it became material.
The evidence had shown that the deceased arose from
the table, cursing the defendant, and placed his hand in
his bosom, and using threatening language. It was er-
ror to sustain the objection to the question to the wit-
ness White, "State whether you told the defendant that
Scott Davenport, the deceased, carried a pistol con-
cealed about his person."—*Wiley v. State,* 99 Ala. 146,
13 South. 424; *Naugher v. State,* 116 Ala. 463, 23
South. 26; *Cawley v. State,* 133 Ala. 129, 32 South. 227.

There was no error in overruling the objection to the
remarks of the solicitor in argument.

The first and sixth charges, given by the court at the
request of the solicitor, need not be considered, as the
verdict was for manslaughter.—*Mitchell v. State,* 133
Ala. 65, 71, 32 South. 132; *Evans v. State,* 109 Ala. 12,
21, 19 South. 535; *Harrison v. State,* 144 Ala. 20, 28, 40
South. 568.

Charge 2, given at the request of the state, correctly
states the law.—*Evans v. State,* 109 Ala. 12, 19 South.
535; *Mitchell v. State,* 133 Ala. 66, 32 South. 132;
*Harrison v. State,* 144 Ala. 20, 40 South. 568.

Charge 3, given at the request of the state, is prob-
ably confusing; but the court cannot be placed in error
for giving it.

Charge 4 was properly given at the request of the
state.—*Raines v. State,* 40 South. 932, 934.

Charge 5 states the law correctly and was properly
given.—*Linehan v. State,* 113 Ala. 72, 21 South. 497.

Charge 9, given at the request of the state, expresses
the law correctly.—*Little v. State,* 89 Ala. 99, 8 South.
82.

There was no error in the giving of charge 10 requested by the state.—*Prater v. State,* 107 Ala. 26, 18 South. 238.

There was no error in the refusal to give charge 6, requested by the defendant. It fails to hypothesize freedom from fault on the part of the defendant in bringing on the difficulty, besides being subject to other infirmities.

Charge 8, requested by the defendant, states the law correctly and should have been given. It was not liable to the criticism that it pretermitted one or more of the elements of self-defense, because it did not instruct the jury as to acquitting or convicting the defendant, but dealt merely with the duty to retreat.—*Hammil's Case,* 90 Ala. 577, 582, 8 South. 380; *Deal v. State,* 136 Ala. 52, 34 South. 23 (charge 12).

Charge 14, requested by the defendant, failed to hypothesize the belief of the defendant that he was in imminent peril, and was properly refused.

Charge 16, requested by the defendant, was faulty, in that it asserted as a fact that "the language and conduct of Scott Davenport, taken in connection with his previous threats,   *   *   *   are evidence that he, defendant," was in danger. This was a matter for the jury to determine.

Charge 17 was properly refused. It placed the burden on the state to show that the defendant was free from fault and did not hypothesize the elements of self-defense.

Charges 21, 23, and 24 were properly refused, as they failed to hypothesize the defendant's belief in the imminency of his peril or his freedom from fault.

Charges 25 and 31 were properly refused, as they failed to hypothesize freedom from fault in bringing on the difficulty on the part of defendant.

[Barber v. The State.]

Charge 26, requested by the defendant, asserts correct principles of law, and it should have been given.— *Holmes v. State,* 100 Ala. 80, 84, 14 South. 864.

Charge 27 was properly refused.—*Linehan's Case, supra.*

Charge 29 was misleading, as placing too great emphasis on the proof of character.

Charges 35 and 36 do not embody any instruction to the jury, but seek to bring to their attention certain evidence which had been excluded, and said charges were properly refused.

Charge A, requested by the defendant, was properly refused. "If the defendant would lessen his danger by retreating" embodies the very fact which places upon him the duty of retreating.

Charges B, C, D, and E were merely answers to the argument of the solicitor, and were properly refused.— *Tribble v. The State,* 145 Ala. 23, 40 South. 938; *White v. State,* 133 Ala. 122, 32 South. 139.

The judgment of the court is reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and HARALSON and DENSON, JJ., concur.