# Patterson *v.* The State.

## *Murder.*

(Decided June 4, 1909.   47 South. 52.)

1. *Jury; Venire; Quashing; Mistake in Middle Initial.*—Under section 5007, a mistake in the middle initial of a juror's name furnishes no grounds for quashing a special venire drawn to try a capital case.

2. *Evidence; Admissibility.*—A witness having testified fully as to the circumstances attending the killing, and having stated that she was present at a former trial, but did not go upon the stand, it was competent to show that she did not arrive until the argument in the case was being concluded.

3. *Same; Hearsay Testimony; Scene of Crime.*—Where it developed upon cross examination of witness that the witness' knowledge of the place of the crime was derived from information obtained from another, and there was nothing to show the other's personal knowledge of the place, it was proper to exclude the evidence of such witness as to the topography of the scene of the crime.

4. *Same; Former Difficulty.*—While it is competent to show that there had been a former difficulty between the defendant and the deceased, it is not proper to show the details of such difficulty.

5. *Same; Opinion Evidence; Comparisons.*—Although a witness may testify under certain conditions that the decedent bore a bad character, it is not proper to permit a witness to testify that he

[Patterson v. The State.]

had had dealings with many bad men, but that decedent was the most dangerous man he had ever known, since to do so would be to permit him to institute a comparison.

6. *Witnesses; Credibility; Impeachment.*—Evidence offered by way of a written showing for a witness that such witness had had a conversation with the widow of decedent in which she stated that she had sworn falsely on the previous trial, and that neither she nor her daughter, who testified in the present case knew anything of the details of the crime, was patently inadmissible.

7. *Same; Intent.*—The defendant may not testify as to his secret or uncommunicated purpose or intention; but this rule does not deny the right of the state to inquire of him as to his motive for particular acts testified to by him.

8. *Same; Conclusion.*—Objections are always properly sustained to questions calling for the conclusion of the witness.

9. *Same; Malice.*—Malice is a mental state or condition of mind which prompts the doing of an unlawful act without legal excuse or justification.

10. *Judgment; Res Adjudicata.*—The determination in a civil action between two individuals by the jury that a certain island in the Tennessee river belong to a named county, cannot operate as res adjudicata in a criminal case so as to give that county undisputed jurisdiction over said island.

11. *Criminal Law; Venue; Statutory Provision.*—Section 128, Political Code 1907, does not give a county bordering on the Tennessee river jurisdiction over a crime commtited on an island in the river which was not a part of such county.

12. *Same.*—Section 7229, Code 1907, does not cover the case where the crime is committed on an island in the Tensessee river, in the absence of evidence as to the distance of the island from the respective counties on either side of the river, or of the width of the river at that point.

APPEAL from Lawrence Circuit court.

Heard before Hon. D. W. SPEAKE.

Steve Patterson was convicted of muder in the second degree, and appeals. Reversed and remanded.

Defendant was indicted for killing Giles Davis. For a former report of this case, see 146 Ala. 39, 41 South. 157. The evidence of the witness Young, embraced in brackets as noticed in the opinion, is as follows: After testifying as to the character of Giles Davis, witness said: "And have had dealings with many bad men, and that Davis was the most dangerous man I ever knew." The evidence of Irwin was offered by way of a written

[Patterson v. The State.]

showing, and is as follows: That witness had a conversation with Mary Davis, the widow of Giles Davis, during the past winter or fall, and that in such conversation the said Mary Davis told witness that she and her daughter, Lizzie Davis, were at their home on Burkett's Island at the time Giles Davis was killed; that they were in the house at the time, and heard the shot, but that they could not see any of the parties, or hear anything but the shots; that it was impossible to see the place where Davis was killed from the house on account of physical obstructions; that the house was in a low place, and that the place where Davis was killed was in another low place, with high grounds and a shell mound between them, besides bushes, trees, and large corn, and that neither she nor Lizzie Davis saw the shooting, or heard anything except the pistol shots; and that witness swore falsely upon the other trial of the case through fear of Tom Warren, a brother of Giles Davis, who told her what to swear and told her he would kill her if she did not do it. The other facts sufficiently appear in the opinion of the court.

C. M. SHERROD, for appellant. Counsel discusses the assignments of error as to the admission and rejection of evidence, but without citation of authority. The court erred in its definition of malice.—*Cribbs v. The State,* 86 Ala. 613; *Bouldin v. The State,* 102 Ala. 86; *Patterson v. The State,* 16 Ala. 39. The court erred in refusing charge 1.—*A. G. S. R. R. Co. v. Frazer,* 93 Ala. 45; *Parham v. The State,* 147 Ala. 57. The court erred in its charge as to venue.—*Patterson v. The State,* 146 Ala. 39; *Jackson v. The State,* 90 Ala. 590; *Compton v. The State,* 110 Ala. 24.

ALEXANDER M. GARBER, Attorney-General, for the State.

[Patterson v. The State.]

DENSON, J.—The defendant was tried in the circuit court of Lawrence county upon an indictment charging murder, in Code form, and was convicted of murder in the second degree. From this judgment this appeal is prosecuted by the defendant.

The mistake made in the second initial of juror Taliaferro's name furnished no ground for quashing the special venire, and the court cannot be put in error for overruling the motion. Cr. Code 1896, § 5007, and cases cited under that section.

The witness Lizzie Davis, after testifying fully in respect to the circumstances under which the homicide was committed, testified that she was present on a formal trial of the case, but did not go on the stand. It was competent to allow the solicitor to explain why the witness was not examined on the former trial, by showing by her that she did not arrive until the argument in the cause had been concluded.

Witness George Brooks' evidence was, in effect, that on account of the topography of the locality the place where deceased was killed could not have been seen by a person at the house of the deceased. It developed on cross-examination that the only knowledge the witness had of the place where the killing occurred was derived through information from one McCary, who showed him the locality. It did not appear that McCary was present at the commission of the homicide, or that he knew that the place pointed out to the witness was the scene of it. In this state of the evidence, Brooks' information as to the place must be regarded as having been obtained through hearsay evidence; and the court properly granted the solicitor's motion to exclude his evidence "as to where Davis was killed."

C 5

It has been frequently decided by this court that, while the evidence of a former difficulty between the deceased and the defendant is, under certain circumstances, competent evidence for a defendant, yet the details of such difficulty are not competent as evidence. Hence the court did not err in excluding that portion of the evidence of the witness John Lang embraced in the brackets in the bill of exceptions.—*Jones' Case,* 116 Ala. 468, 23 South. 135; *Gafford's Case,* 122 Ala. 54, 25 South. 10; *Longmire's Case,* 130 Ala. 66, 30 South. 413; *Sanford's Case,* 143 Ala. 78, 39 South. 370; *Patterson's Case,* 146 Ala. 39, 41 South. 157.

Nor did the court err in excluding that part of the evidence of witness Young, embraced in brackets in the bill of exceptions. He was competent to testify that Davis bore a bad character, but it was not legitimate for him to institute a comparison between the characters of other men he had known and the character of Davis.

The evidence of D. W. Irwin, offered by defendant, is so patently illegal as to require no further consideration.

It is not permissible for a defendant, as a witness in his own behalf on the examination in chief, to testify as to his secret and uncommunicated purpose or intention.—*Smith's Case,* 145 Ala. 17, 40 South. 957. But on cross-examination of the defendant it is permissible to inquire as to his motives for particular acts testified to by him.—*Linnehan's Case,* 120 Ala. 293, 23 South. 6; *Hurst's Case.* 133 Ala. 96, 31 South. 933. These principles show that the court committed no error in declining to allow the defendant to be asked, on the direct examination, "Why did you not retreat?" and in allowing him to be asked on the cross, "What did you carry your

pistol with you for?" The other questions propounded to the defendant by his counsel called for conclusions, and objections thereto were properly sustained.

The court in its oral charge instructed the jury in this language: "I charge you, gentlemen of the jury, that malice in law does not necessarily mean hate or ill will, but is defined as any unlawful act willfully done, without just cause or legal excuse. It is that mental state or condition which prompts the doing of an unlawful act without legal justification or extenuation." When the case was here on a former appeal, this charge, with the exception of the last sentence, was presented for review; but the court, finding reversible errors in the record aside from a consideration of the charge, after suggesting that malice might be so defined on another trial as to exempt the definition from the criticism in the *Cribbs Case*, 86 Ala. 613, 6 South. 109, declined to decide whether or not, if the charge were the pivotal point, the judgment would be reversed thereon. The charge considered in the *Cribbs Case* was in this language: "Malice, in law, does not necessarily mean hatred or ill will, but the intentional doing of an unlawful act." It is manifest, as was said by the court in that case, that the definition of malice as there given would constitute every intentional and unlawful homicide malicious, though committed in heat of passion excited by sufficient provocation. And the court, in concluding the discussion, gave a definition of legal malice in this language: "Malice, as an ingredient of murder, may be defined, in legal phrase, as the killing of a human being without legal justification, excuse, or extenuation."

This brings out clearly the defect in the definition of malice that was under discussion there, and shows that it consisted in the fact that lack of excuse or ex-

tenuation was not hypothesized. In this view, we think the *Cribbs Case* is not only not condemnatory of the charge in judgment here, but it is an authority in support of its correctness. The charge is also fully and precisely supported by *Boulden's case,* 102 Ala. 78, 86, 15 South. 341, and likewise finds support in *Stoball's Case,* 116 Ala. 454, 23 South. 162. See, also, authorities cited to the point in *Boulden's Case.* The court committed no error in giving the charge.

The court refused the affirmative charge with hypothesis, requested in writing by the defendant, and gave ex mero motu the following charge: "I charge you, gentlemen of the jury, if you believe from the evidence in this case that the killing occurred on Burkett's Island, and that Burkett's Island is in the Tennessee river, between Lawrence county and Limestone county, then Lawrence county has jurisdiction of the offense." The evidence in the case is without conflict that the killing took place on an island, known as Burkett's or Robinson's Island, and that this island is located in the Tennessee river; that on the north side of the island is Limestone county, and on the south side is Lawrence county, with the river running between the island and each county. The primary question here presented is that of venue or jurisdiction. By the territorial act of February 9, 1818, it is provided that "the islands in the Tennessee river, within the lines actually run in the surveys already made, shall be deemed and taken to constitute a part of the respective counties established by law within said survey, and shall belong to such counties respectively, to the shore or river boundary of which they may be most near. In *Russell v. Robinson & Co.,* 153 Ala. 327, 44 South. 1040, the question came up, to which of the counties of Lawrence or Limestone does Burkett's Island belong? The solution of

the question, it was determined, depended upon which of the two counties' boundaries the island was "most near" to at the time of the passage of the act; and it was there in effect determined that the question was not one of judicial knowledge, but must be left to a jury to determine. The jury determined the question in that case in favor of the contention that the island was in Lawrence county, and the judgment on that verdict was affirmed. That case being one between individuals, and not between the two counties, the adjudication had therein cannot operate as res adjudicata of the question as now presented. Therefore the venue cannot be said to be proved merely by proof that the homicide was committed on Robinson's or Burkett's Island. The record contains no proof in respect to which boundary of the two counties the island is "most near" to, and therefore, unless section 128 of the Political Code or 7229 of the Criminal Code of 1907, one or both, are operative in this cause, it is manifest that the court erred in giving the oral charge and in refusing the affirmative charge.

Section 128 provides that "the jurisdiction over navigable streams, not included within the limits of any county, belongs to the county or counties whose jurisdiction extends to the margin thereof, and all process may be executed on such streams by officers of either county." Under the ruling made in *Jackson's Case,* 90 Ala. 590, 8 South. 862, this statute applies, in respect to venue, to offenses committed on the river; but it does not follow that it should be extended to offenses committed on an island located in the river, which is included within the limits of, or belongs to, a particular county. On the contrary, from the very wording of the statute, it seems clear to us that such extension was not contemplated by the Legislature and should not be al-

lowed. It is obvious, from what has gone before, that the island in question belongs to, and is included within the limits of, either Lawrence or Limestone county; but the evidence fails to disclose which. Nor is there any evidence in the record tending to show the width of the river or the distance from the island to the bank of the river. on the Lawrence county side; so that it must follow that section 7229 cannot be applied to save the court from error in giving the oral charge excepted to, or from that in refusing the general affirmative charge requested.

Having determined that the affirmative charge should have been given as requested, it is deemed inappropriate to consider other charges refused to defendant. For the errors pointed out, the judgment of conviction must be reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., concur.