# Livingston v. The State.

## *Murder.*

(Decided November 19, 1912.   Rehearing granted January 23, 1913.
61 South   54.)

1. *Homicide; Evidence.*—Where it appeared that the defendant fired the fatal shot behind a curtain in the store and defendant testified that deceased drew a knife with his right hand and attacked him, and the state contended that defendant came into the store and deceased went with him behind the curtain carrying in his right hand a glass of soda water which he had just purchased, and it appeared that when the shot was fired every one ran out of the store, and that after deceased was shot he came from behind the curtain and sank to the floor, it was competent to show the position of deceased when picked up, and that a soda water glass was within a few inches of his right hand with the liquid on the floor, notwithstanding there was evidence that deceased left the glass on the counter when he went behind the curtain, and that it was accidentally knocked off on the floor.

2. *Same; Res Gestae.*—A declaration by defendant on leaving the place of the killing that "it was either kill or get killed, that he just lacked that much of getting me," was not admissible as part of the res gestae, it being defendant's version of a past transaction and descriptive and narrative in charatcer.

3. *Same.*—There being evidence that there was no change in conditions at the place of the homicide between the time when defendant left and when it was searched by witnesses, it was competent for the state to show that no knife was found on the person of the deceased at the place and that a pistol which defendant had procured shortly before he went to the place, was found there after he left.

4. *Witnesses; Impeachment; Interest of Witness.*—Where a witness on cross-examination denied that he had made a statement indicating that he had yielded to corrupt influences, it was proper for the state to lay a predicate and to prove the making of such statements by him.

5. *Same; Inconsistent Statement.*—A witness may be impeached by proof of statements or declarations made by him out of court inconsistent with the statements made by him in the court.

6. *Same; Foundation for Impeachment.*—The right to impeach a witness by proof of inconsistent statements is conditioned upon distinctly calling his attention to the time and place thereof, and the person to whom or in whose presence the variant statements were made, so as to give him opportunity to recall what then occurred, and to explain what was then said.

7. *Same; Presumption.*—Where the bill of exceptions purports to set out all the evidence and does not show that the necessary predi-

cate for impeachment was laid, yet sets out in narrative form the witness's denial that he made such statement without showing the question to which such a denial was a response, the appellate court, in order to sustain the ruling of the trial court, will presume that such denial was in response to questions specifying time and place and persons and that the proper predicate was laid.

8. *Appeal and Error; Presumptions; Order of Instruction.*—Where the bill of exceptions sets out charges given for the state in advance of charges given for the defendant, it may be presumed, in the absence of a contrary showing that such charges had already been given when alleged inconsistent charges were requested by and given for defendant.

9. *Same; Party Inviting Error.*—Where charges had been given for the state, and a defendant then requests and has given charges inconsistent with those given for the state, the defendant cannot complain of the result brought about by the compliance of the court with his request.

APPEAL from Lamar Circuit Court.

Heard before Hon. BERNARD HARWOOD.

Morris Livingston was convicted of murder in the second degree, and he appeals. Affirmed.

For opinion of the Supreme Court on several questions involved see *Ex parte State,* 61 South. 53.

WALTER NESMITH, J. C. MILNER, and KIRK, CARMICHAEL & RATHER, for appellant. A witness cannot be impeached by contradictory statements without having his attention distinctly and clearly called to the time when, place where, and persons to whom or in whose presence the statement was made.—*Goodwin v. The State,* 1 Ala. App. 136; *Powell v. The State,* 19 Ala. 577; *Floyd v. The State,* 82 Ala. 16; *Sanders v. The State,* 105 Ala. 4; *Southern v. The State,* 118 Ala. 88; *So. Ry. v. Williams,* 113 Ala. 620. The court will not presume that a predicate was laid in order to cure manifest error, and sustain the ruling of the trial court.— *So. H. & S. Co. v. Standard Equip., Co.,* 165 Ala. 582; *Sherrill v. L. & N.,* 148 Ala. 1; *Excelsior S. L. Co. v. Lomax,* 166 Ala. 612; *Bolton v. Cuthbert,* 132 Ala. 406. J. G. and J. L. Cobb are not one and the same persons, and

[Livingston v. The State.]

are not shown to be so by the evidence.—*Wilson v. Johnson,* 137 Ala. 472; *Grimmer v. Nolan,* 146 Ala. 467; *Bank v. Hacoda,* 169 Ala. 476. The charges given for the state were inconsistent with certain charges for the defendant, and it cannot be ascertained what effect the conflicting charges had upon the jury in arriving at their verdict.—*Metcalf v. S. L. & S. F. R. R. Co.,* 156 Ala. 240. Counsel discuss charges refused, but without citation of authority.

R. C. BRICKELL, Attorney General, W. L. MARTIN, Assistant Attorney General, and W. B. OLIVER, for the State. The law knows but one christian name, and it will be presumed in the absence of a contrary showing that J. G. and J. L. Cobb was the same person.—*Burney v. The State,* 69 Ala. 233; *Edmondson v. The State,* 17 Ala. 179. The objection was general and did not direct the attention of the court to the fact of want of proper predicate.—*Nelson v. Iverson,* 29 Ala. 9; *State v. Glenn,* 51 Vt. 577; *The Charles Morgan,* 115 U. S. 77; *Steiner v. Trainum,* 98 Ala. 315; Jones on Evid. sec. 893. The character of the evidence sought was merely an inculpatory admission of defendant and no predicate was necessary.—*Shelton v. The State,* 144 Ala. 111.

WALKER, P. J.—The defendant was indicted for murder in the first degree, was convicted of murder in the second degree, and appeals. The evidence showed that the killing occurred in the rear part of a drug store in the town of Vernon. That for the state tended to show that when the defendant came into the store the deceased and another person were sitting in the front part of the store, the two having just been served drinks at the soda water fountain, the deceased having in his right hand the glass containing part of the drink which

had been served to him; that on the defendant's saying
something to the deceased, both of them walked back to
the rear of the store and behind a curtain which sep-
arated the rear from the front part of the store, the de-
ceased still having the glass in his hand when he disap-
peared behind the curtain; that some conversation
took place between the two men, which was followed by
the sound of a pistol shot from behind the curtain, after
which the deceased was heard to say, "He has killed
me!" and then was seen to come from behind the cur-
tain and sink down with his back against the wall just
on the front side of the curtain.

A. A. Lowery, the proprietor of the drug store, having
testified to seeing the deceased come from behind the
curtain and sink down, was then asked and answered
questions as follows, the defendant objecting to each of
the questions on the ground that it called for irrele-
vant, incompetent, and inadmissible testimony, and
moving to exclude each of the answers on the same
grounds which were assigned in the objection to
the question: "Q. As soon as you saw him sit down
there, what did the people in the drug store do; and
what did you do? A. The people ran out of the drug
store, and so did I. Q. What did you do after you saw
him fall or sit down? A. I ran out of the drug store.
Q. What did you do with reference to Gunter, if any-
thing? A. I went out and called for help." It is be-
cause of its connection with other subsequently admit-
ted evidence that we regard the testimony thus elicited
as relevant and admissible. This testimony was fol-
lowed by other testimony, which tended to show the sit-
uation and surroundings of the deceased as found by
the persons who were the first after the shooting to en-
ter the store about or immediately after the time of the
defendant's coming out of it. The above-quoted testi-

[Livingston v. The State.]

mony of Mr. Lowery, in connection with testimony which followed it, had a tendency to prove that the conditions found by those who first entered the store after the shooting were as they were at the conclusion of the difficulty, and when the defendant left the scene, and we are of opinion that that testimony was admissible as furnishing support for an inference that such was the fact.

We are not of opinion that the court was in error in overruling objections of the defendant to the testimony of the witness Bankhead as to the position or attitude of the deceased as the witness saw him in the store after he was killed, and as to the position of a soda water glass on the floor within a few inches of the right hand of the deceased, and the appearance of liquid on the floor right near the glass. One of the grounds of objection to this testimony was that it was not shown that the conditions and surroundings were the same at the time in reference to which the witness testified as they were when the deceased sank to the floor after being shot. It is true that the witness did not claim to know that such was the fact. But, as above indicated, there was other testimony before the jury, from which they would have been authorized to infer that the situation and surroundings of the deceased at the time the witness saw him were the same as they were when the defendant left the scene. Evidence from which the jury could so infer is sufficient, though no witness testified that such was the case. It is plain that the testimony objected to had a tendency to prove that the deceased received the fatal wound while he yet held in his right hand the glass containing part of the drink which had been served to him shortly before he and the defendant went to the back part of the store. Evidence offered by the defendant tended to show that the deceased left the

glass on the counter before going behind the curtain with the defendant, and that a witness for the defendant accidentally knocked it off the counter after the killing, and the testimony of the defendant himself was to the effect that, when they were behind the curtain, the deceased with his right hand drew a knife from his pocket and attacked the defendant. The conflict of the evidence on this subject presented a question for the jury.

The court sustained the objections of the state to testimony offered by the defendant to the effect that he said, just after he came out of the store: "It was either kill or get killed; he just lacked that much of getting me." It is urged in behalf of the appellant that this testimony should have been admitted as evidence of a declaration which formed a part of the res gestae. We are of opinion that the action of the court in sustaining the objections to this testimony must be upheld on considerations very similar to those which were stated by this court in the opinion rendered in the case of *Lundsford v. State*, 2 Ala. App. 38, 56 South. 89, in support of the conclusion that evidence of certain declarations of the defendant in that case was not admissible because not really forming a part of the transaction under investigation. On the face of it, the declaration of the defendant which was sought to be proved was in its nature a statement by him of what already had occurred—was his version of a transaction which then was a thing of the past. "The element of time is not always material. If the declarations are narrative and descriptive in their form and character, if they are not the impromptu outpourings of the mind, they should be rejected, though uttered only a few minutes after the main transaction."—Underhill on Criminal Evidence, § 96.

It was not improper to permit the state, on the cross-examination of the defendant's witness Baker Sisson, to interrogate him in reference to corrupting influences brought to bear upon him in regard to his testimony in the case, and, on his denying that he had made statements indicating that he had yielded to such influences, to lay the proper predicate for, and to prove the making of, such statements by him. "The jury have the right in all cases, in weighing the evidence, to know the influence which operates upon the witnesses, and to judge of the weight to be given to their evidence under the circumstances."—*Rivers v. State,* 97 Ala. 72, 12 South. 434. One party may show that the testimony of a witness is corrupt, whether it was the other party or some one else who was guilty of corrupting him. It is a familiar mode of impeaching a witness to prove his interest or bias.—Underhill on Criminal Evidence, § 248.

It was permissible for the prosecution, in connection with evidence tending to show that there had been no change in the surroundings or conditions of the scene of the killing between the time when the defendant left the store and the time when it was searched or examined by witnesses, to prove that no knife was found on the person of the deceased or about the scene of the killing, and that a pistol which the defendant got shortly before he went to the store was found there in a show-case after he left.

A witness may be impeached by proof of statements or declarations, made by him out of court, which are inconsistent with or contradictory of his testimony. But the right to resort to this method of impeachment is subject to the condition that the attention of the witness first be called clearly and distinctly, with reasonable certainty, to the time when, the place where, and the person or persons to whom, or in whose presence, it is sug-

gested that a variant statement or declaration was made by him, so as to enable the witness to recall to mind what, if anything, occurred on the occasion referred to, and to afford him the opportunity of giving his version or explanation of the purport of what was said on that occasion, if he admits that he then made any statement on the subject of the inquiry.—*Goodwin v. State,* 1 Ala. App. 136, 56 South. 29; *Powell v. State,* 19 Ala. 577; *Floyd v. State,* 82 Ala. 16, 2 South. 683; *Nelson v. Iverson,* 24 Ala. 9, 60 Am. Dec. 442; *Southern Railway Co. v. Williams,* 113 Ala. 620, 21 South. 328; Underhill on Criminal Evidence, § 238. In some of its rulings in admitting, over the defendants objection on the ground that the proper predicate had not been laid, proof of declarations or statements by witnesses for the defendant which were inconsistent with their testimony, the court failed to require a compliance with the prescribed condition for the admission of such evidence. J. M. Baker, a witness for the state, was permitted, over the defendants objection on the ground just mentioned, to testify to a declaration or statement by the defendant's witness Joe Holley, though the attention of the latter had not been called to the time or place when and where it was suggested that he had made such declaration or statement. And J. G. Cobb was permitted, over a similar objection made by the defendant, to testify to a declaration or statement of the latter which was made at variance with his testimony, though he had not been questioned in regard to any statement or declaration made by him to J. G. Cobb, or in his presence. The defendant on his cross-examination was asked about a statement made by him to one J. L. Cobb. There is nothing in the bill of exceptions to indicate that the witness who testified to such variant declaration by the defendant was the same person who was named in the

questions propounded to the defendant. The rule of law prescribing the condition upon which such evidence may be admitted constrains us to hold that in the rulings just mentioned the court committed errors which require a reversal of its judgment.

Other questions presented for review are such as may not arise in another trial of the case, and a discussion of them is not deemed necessary.

Reversed and remanded.

### ON REHEARING.

On reconsidering, in view of what has been said on the subject in the opinion rendered in this case by the Supreme Court (*Ex parte State,* 61 South. 53), the question raised by the objection to the testimony of the witness J. M. Baker as to a statement made to him by the defendant's witness Holley, we conclude that the bill of exceptions, which purports to set out all the evidence, does not show that the predicate required to render that testimony admissible was laid, yet, as it sets out in narrative form Holley's denial that he made such statement, the question or questions eliciting such denial not being set out, it does not show to what inquiry such denial was a response. We understand from the ruling made by the Supreme Court in this case that in this situation, in order to sustain the ruling of the trial court, the presumption is to be indulged that such denial was in response to a question or questions which specified the time and place of the statement inquired about, that the proper predicate had been so laid, and that the testimony of Baker was not subject to the objection interposed to it.

The counsel for the appellant, without undertaking to point out any fault in written charges 1 and 4, given

at the request of the state, contends that those charges were inconsistent with certain written charges which were given at the request of the defendant, and that there should be a reversal because of such inconsistency or conflict. We may say that we have not discovered the incompatibility suggested. .However that may be, as the bill of exceptions first sets out the charges given at the request of the state, it may be presumed, the contrary not being shown, that the state's written charges mentioned had already been given to the jury when the alleged inconsistent charges were requested by the defendant. If so, then the court fell into the alleged inconsistency complained of at the invitation of the defendant himself, and he is in no position to complain of a result brought about by the court's compliance with his own request.

We do not discover any prejudicial error in any of the rulings of the court in giving or refusing instructions to the jury.

Affirmed.