27 So.2d 259

### DODD v. STATE.
.7 Div. 836.

Court of Appeals of Alabama.

Aug. 1, 1946.

C. W. Stringer, of Talladega, and L. H. Ellis, of Columbiana, for appellant.

506

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The appellant, Clarence E. Dodd, was indicted for murder in the first degree. He was by a jury found guilty of manslaughter in the first degree and his punishment fixed at imprisonment in the State penitentiary for a term of four years.

The evidence introduced by the State was directed toward establishing that on the night of March 11, 1944, a poker game was being held in the home of the appellant. The deceased and six other men were present. During the game appellant and one of the participants, Charlie B. Pruett, had loaned and repaid $5 between them several times and some discussion arose between these two as to whether appellant owed Pruett this sum. The deceased injected himself into the discussion by telling appellant he knew "damn well" he owed Pruett the money. Appellant told deceased the matter was none of his business, whereupon deceased attempted to attack appellant with a knife. The appellant defended himself by knocking deceased down. While deceased was down appellant got on top of him and slapped or hit deceased twice. Upon deceased's promise to put away his knife the appellant let him up. The appellant then picked up a shotgun which was lying on a bed in the room and ordered deceased out of his home, and escorted deceased to the door. The deceased's home was about one hundred and thirty-five feet distant from appellant's home.

This disturbance seems to have broken up the poker game, and all of the participants departed. The appellant called to one of them, Tommy Wills, to come back, which Wills did; followed by Roy Johnson. Johnson reported Wills' car had been stolen. Wills said he would go and investigate, and appellant went with him, carrying his shotgun. They got as far as the house of Mr. Murphy, a neighbor, whose house was about seventy feet from that of appellant's, when they saw Wills' car still where it had been originally parked. Appellant and Wills thereupon sat down on Murphy's steps and had talked about five or ten minutes when they observed the deceased come out of his back door carrying a shotgun. Wills went toward his car and appellant started toward his house. When appellant was in his yard and near his front steps he fired twice at deceased who, according to appellant, had advanced into his yard and was about twenty steps away. The deceased walked back toward his home but collapsed and fell after a few steps.

The appellant immediately went to the home of Mr. Sam Roberts, a peace officer, informed him he had shot the deceased, and surrendered to him. Roberts took appellant back to a small road close to deceased's house and parked his car. After

they had been their some time the appellant told Roberts that he had no warrant for him and that he (appellant) was going home. Roberts thereupon caught appellant by his belt and appellant struck Roberts twice. Roberts then felled appellant with a billy. This testimony pertaining to this difficulty between appellant and Roberts was admitted over the objection of the appellant.

The appellant contends strenuously that the lower court erred in admitting over his timely objections the testimony relating to and detailing the difficulty between the appellant and deceased at the poker game prior to the shooting.

■ The developed doctrine of our decisions is liberal in permitting the defendant in assault or homicide cases where self defense is involved to go into the details of a prior difficulty not too remote in time in order to show the gravity thereof and as shedding light on who was the aggressor in the subsequent difficulty. Ryan v. State, 100 Ala. 105, 14 So. 766; Watts v. State, 177 Ala. 24, 30, 59 So. 270, 272; Nelson v. State, 13 Ala.App. 28, 68 So. 573; Folkes v. State, 17 Ala.App. 119, 82 So. 567; Thornton v. State, 18 Ala.App. 225, 90 So. 66. On the other hand, the State is limited to showing only the fact of a prior difficulty between the accused and deceased, but cannot go into the particulars or merits of such prior difficulty. Stallworth v. State, 146 Ala. 8, 41 So. 184; Bluett v. State, 151 Ala. 41, 44 So. 84; Robinson v. State, 155 Ala. 67, 45 So. 916; Patterson v. State, 156 Ala. 62, 47 So. 52; Sanders v. State, 19 Ala.App. 367, 97 So. 294; Higdon v. State, 25 Ala.App. 209, 143 So. 213.

■ The rule allowing the State to show the fact, but not the details of a former difficulty, is undoubtedly easier to state than to apply. The demarcation between the fact, or highlights, of a former difficulty, and its details, is indeed a tenuous and vague division. A measure of discretion should and must be allowed the trial judge in determining the extent of detailing necessary to picture and constitute the fact. Brothers v. State, 236 Ala. 448, 183 So. 433.

■ To be considered with the above principles is the doctrine too well understood to require citation that if the prior difficulty be so connected with the later offense as to form a part of the res gestae then all details of the prior difficulty are admissible in evidence.

■ As stated by Carr, J., in Brown v. State.*

"The term res gestae means 'the thing done; transactions; essential circumstances surrounding the subject.' Black's Law Dictionary, 3 Ed., p. 1539.

■ "'Acts or declarations, to be admissible under the principle of res gestae, must be substantially contemporaneous with the main fact under consideration, and so closely connected with it as to illustrate its character.' Dudley v. State, 185 Ala. 27, 64 So. 309, 310. See also, Roan v. State, 225 Ala. 428, 143 So. 454.

■ "We sometimes labor under the false premise that if a transaction occurs at or about the time of the happening of the main event, this and this alone brings the transaction within the res gestae rule. This is not the measuring rod. The relation in point of time is not the sole criterion. The inquiry is: Was it so connected and associated with the chief transaction as to virtually and effectively become a part of it? Pope v. State, 174 Ala. 63, 57 So. 245; Livingston v. State, 7 Ala.App. 43, 61 So. 54."

■ In the instant case the participants in the poker game departed immediately after the difficulty between appellant and deceased. Defendant accompanied one of the participants about seventy-five feet to a neighbor's house where they sat on the steps. After a lapse of only five or ten minutes the deceased was observed by appellant leaving his house with a shotgun. In our opinion the actual shooting was so connected with the prior difficulty by proximity of time and sameness of locality as to make it but a continuation of the prior difficulty. The details of the prior difficulty are in this case so dovetailed with the subsequent shooting as to be necessary to a rational understanding of the homicide.

---

* Not released by court at date of publication.

These details were in our opinion therefore properly received in evidence as part of the res gestae.

Even had we concluded that the testimony concerning the details of the prior testimony were not a part of the res gestae of the subsequent shooting, we cannot see that the appellant was injured by their admission inasmuch as the conduct of appellant as revealed by this testimony was that of a reasonable man being attacked by another and in no way tended to cast reflection on him.

Neither did the court err in permitting over the objection of appellant the testimony concerning the fight between the appellant and the peace officer Mr. Roberts. While Mr. Roberts may have improperly carried out his duties as an arresting officer in that he did not carry the appellant forthwith before a magistrate (see Sec. 160, Title 15, Code of Alabama, 1940), the officer's duty yet remained to see that his prisoner did not escape. By appellant's own testimony he had declared to the officer he was going home. Such statement had a tendency to evidence an intent of flight. That appellant was forcibly restrained from leaving the officer was therefore relevant and properly admitted.

No possible harm could have resulted to appellant from the court's action in overruling appellant's objection to the question propounded by the solicitor to the witness Roberts when recalled by the State as a rebuttal character witness since the record shows that Roberts never answered the question.

Over the strenuous objection of the appellant a peace officer was permitted to testify that when he examined the scene of the shooting on the afternoon following the shooting he found two or three pieces of shotgun wadding at a point about six or eight feet across appellant's boundary line separating appellant's premises from Mr. Murphy's. No witness testified as to the distance wadding would be thrown by firing its shell. Appellant contends that the evidence concerning those wads was incompetent since it was not shown that the locus of the crime had remained unchanged prior to the finding of the wads. There was evidence that a number of persons had visited the scene. Because of its fragmentary character the evidence had little probative value. It had some relative value, though only slight, and in a circumstantial way, in helping the jury determine the position of appellant at the time of firing the gun. The officer was properly permitted to testify to the surroundings at the time he made his investigative visit. This included the locus in quo and everything thereon tending to shed light on the killing. Holland v. State, 24 Ala.App. 199, 132 So. 601; Eden v. State, 24 Ala.App. 37, 129 So. 797; Reynolds v. State, 24 Ala.App. 249, 134 So. 815; Allbritton v. State, 29 Ala.App. 1, 191 So. 268.

It was a question for the jury whether the probative value of this evidence was impaired or destroyed by the fact that a number of other persons had visited the scene before the witness arrived there. Harris v. State, 8 Ala.App. 33, 62 So. 477.

Under the above principle it was likewise no error for the trial court to permit in evidence the testimony of the peace officer concerning the empty whiskey bottles found in the room that had been the scene of the poker game.

A. T. Harris was called by the State as a rebuttal character witness. After a considerable colloquy between counsel on both sides, and the court, and after instruction to the witness as to what constituted general reputation, the witness was permitted to testify over the objection of appellant that appellant's reputation "wouldn't be good." This witness at no time stated he knew the reputation of appellant in the community in which he lived. His testimony does disclose he had known appellant for some fourteen years, and had lived in appellant's community until some three or four months prior to the trial. While no proper predicate was laid to admit answer that appellant's general reputation "wouldn't be good," we do not think after examination of this whole record that this error was sufficiently injurious to the rights of the accused to cause or justify a reversal of this case.

The appellant also argues that the above testimony of Harris was tainted with error in that it was not limited to the time prior to the difficulty. This contention is without merit inasmuch as the appellant had already testified as a witness in his own behalf. Character evidence for the impeachment of a witness may include all time anterior to his testimony. Boyette v. State, 215 Ala. 472, 110 So. 812. When a defendant in a criminal case testifies he is subject to the same rules of impeachment as any other witness. See Ala.Dig., Witnesses, ☞337(1) and 337(2) for innumerable cases to this effect. While the court should have by proper instructions to the jury limited this character testimony in so far as it covered the time subsequent to the killing as going to the credibility of the appellant as a witness, we do not feel it proper to put the trial court in error in failing to so limit this testimony in the absence of any request by the appellant for such instruction.

Affirmed.