(88 South. 847)

**LAMBERT v. STATE. (7 Div. 177.)**

(Supreme Court of Alabama. Feb. 3, 1921. Rehearing Denied April 21, 1921.)

Homicide ⊛163(2), 339 — Evidence of decedent's reputation for turbulence improperly excluded; error not cured.

In a prosecution for murder in the first degree, the testimony of a witness, who knew what the people said as to decedent's reputation in the community for turbulence and violence, as to what such reputation was, was improperly excluded; where the re-examination of the witness was calculated to impress the jury that what people said of the character or reputation of decedent afforded no proper basis for evidence on the subject, the error in the original exclusion of such character evidence was not cured.

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Walter Lambert was convicted of murder in the first degree, and he appeals. Reversed and remanded.

On re-examination of Tom Dill the following occurred:

The witness said: "I couldn't say I personally knew Seab Eason's reputation in the community for turbulence and violence. I have heard it. So far as anything bad, I couldn't say; just only hearsay; I know what people say. From what they say, it is bad."

Counsel for defendant then asked the witness the following question, "Bad for violence and turbulence?" and the witness answered, "That is what I hear, sir, but as for me knowing it, I don't know it."

Counsel for the state objected to this testimony if he did not know it, and the court. sustained the objection. Counsel for the state then said: "We do not question it, if the witness can qualify, but if he don't know the general reputation we object. He says he don't know it."

The court then stated: "I will permit you, Mr. Kline, to ask him if he knows what his general reputation is for being a dangerous character. You answer that question, Mr. Dill, and if you know it say 'Yes,' and if you don't know it say 'No.'" The witness answered, "I don't know it."

The testimony for the defendant tended to show that he acted in self-defense.

Charles D. Kline, of Anniston, for appellant.

No brief came to the Reporter.

J. Q. Smith, Atty. Gen., Lamar Field, Asst. Atty. Gen., and Blackmon & Merrill, of Anniston, for the State.

The court properly disallowed the evidence as to the turbulent character of the deceased. 197 Ala. 193, 72 South. 316; 17 Ala. App. 469, 86 South. 132. On rehearing. the state insists that the case relied on by the court was not applicable to the facts in this case, and in support thereof they cite 88 Ala. 89, 7 South. 335; 122 Ala. 54, 25 South. 10; 141 Ala. 51, 37 South. 359; 143 Ala. 3, 39 South. 362; 5 Ala. App. 290, 57 South. 601.

SAYRE, J. Appellant was convicted of murder in the first degree and sentenced to imprisonment in the penitentiary for the term of his natural life.

The trial court erred in its ruling sustaining the state's objection to the question by which defendant sought to elicit the witness Tom Dill's knowledge of the character of the deceased in the community "for violence and quarrelsomeness"—the question put to the witness on his first examination. This court, having considered the evidence shown by the record, is of opinion that at the time this question was asked the defense had sufficient-

ly developed to require the admission of the evidence sought according to the rule of De Arman v. State, 71 Ala. 351:

"On all doubtful questions as to who was the aggressor, the violent or bloodthirsty character of the deceased, if such be his character, enters into the account"

—not that it furnishes any excuse or palliation for aggressive action, or when the accused seeks or brings on the difficulty, but because more prompt and decisive measures of defense are justified when the assailant is of known violent, bloodthirsty, quarrelsome, turbulent, revengeful, or dangerous character. Subsequently this witness was recalled, and then testified that he knew the reputation of deceased in the community for turbulence and violence, that he knew what people said, and that from what they said it was bad. If the matter had been allowed to rest at this point, we would hold that the previous error had been cured. But what then further occurred very clearly, in our judgment, was calculated to impress the witness with the notion that what people said of the character or reputation of the deceased afforded no proper basis for evidence on that subject, and therefore the witness was led to deny, in effect, his ability to answer the questions put to him, and so, in effect, the defendant was deprived of the full benefit of the testimony of a witness to whom the jury may have attached great importance. It is customary, we believe, to inquire of the witness whether he knows the general character for violence, turbulence, etc., of the person to whom the inquiry relates; but character in such cases means reputation. What is wanted is not the individual opinion of the witness, but his knowledge as to the common repute the subject of the inquiry bears among those who know him, since this is the only mode in which reputation can be ascertained. Such reputation is presumed to be indicative of actual character, and is hence regarded as important where character is material. Jones on Ev. § 859. A witness, having knowledge of the estimate in which a person is held by the public, is competent to testify as to his reputation, his character. De Arman v. State, supra. What occurred when the witness was examined the second time was far from correcting the error committed during his first examination, and we feel constrained to hold that for it the judgment must be reversed.

No useful purpose would be served by a detailed treatment of other rulings pressed for consideration.

For the error pointed out the judgment of conviction will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.