(135 So. 600)

## WALTERS v. STATE.

### 6 Div. 3.

Court of Appeals of Alabama.
June 23, 1931.

R. M. Montgomery, of Birmingham, for appellant.

Thomas E. Knight, Jr., Atty Gen., for the State.

BRICKEN, P. J.

The offense charged in this case is robbery; the corpus delicti was fully proven by the evidence, and as to this there was no dispute or conflict.

The principal state witness was one G. W. Jackson, named in the indictment as the injured party. He testified in substance as follows: "My name is G. W. Jackson; I am a druggist; my place of business is 1530—11th, Avenue, North, Birmingham, Alabama. On or about the 7th, day of June, 1927, I think the records show, I lost some money; it was about ten thirty at night. The clerk, Irby Trainum, was present at the time; I understand he is in California now. I was checking the register, when it happened. I usually close about ten-thirty and commence checking and taking the money out of the register, and I had the currency taken out and put in a long purse and sticking in my hip pocket; my coat was off. The clerk was cleaning the fountain on the other side of the store, and everybody was out except myself, and the delivery boy had gone, and a car dashed up in front of the store, and I looked and tried to see if they were coming in, and they didn't come in and I proceeded to finish checking the register, and just as I turned to count the money two men stepped in the door. They had guns under their arms, and they walked directly to me, and I was standing behind the cash register. They throwed their guns out and stood about two feet off this way; both of them had the guns this way. One turned and held a gun on the boy, Trainum, and told him to come out from behind there and carried him back behind the prescription counter on that side, and the other one took me and told me to go back behind the counter. They held the gun on me all the time, and lined both of us up back there, and turned our faces to the wall. One of them told the other one to clean out the cash register, and he reached in my hip pocket and pulled my purse out. I had everything —check and currency—except silver in there. I had about forty or fifty dollars on me in currency, and then I had some checks too; the silver was in the cash register. One man stayed back there with me while the other one went back and he held the gun on us. He backed off and told us not to turn our heads. He had a 45 automatic pistol, in my best knowledge. I recognized the man that held the pistol on me; I saw him for the first time after this in the County Jail, about 3 days later. Two men went with me in the jail; I think Mr. Propst was one, I am not sure. I went inside. I am not familiar with the jail. This man was in the corridor, or bull pen. There were several men walking around there, and I recognized the two men that was in the store and held me up. I have since found out that their names were Bob Walton or Walters and Fred Bridges. This defendant, is one of them; he is the

one that held the gun on me and carried me back to the rear, and Bridges turned from me and took the soda boy. No one pointed him out to me in the jail; I recognized him. It was on the 7th day of June, I think, and it took place at my store on the northside, at 1530 Eleventh Avenue, in Jefferson County. Yes, June I think, 1927, about ten-thirty at night."

Upon the trial of this case the paramount or controlling question was the identity of the person who committed the robbery complained of and about which there was no dispute. This appellant strenuously denied that he was the man. He admitted, however, that he was in the city of Birmingham and a guest of one of the leading hotels of the city on the night the crime was perpetrated. He testified his home was in Detroit, Mich., and that he was night manager in a certain business concern of that city. He explained his presence in the city of Birmingham by stating he was spending his vacation in said city and had driven from Detroit with one Fred Bridges, also stopping at the same hotel, and said Bridges was also arrested in connection with the perpetration of the crime complained of.

This appellant was convicted as charged and his punishment fixed at ten years' imprisonment in the penitentiary.

As to the identification of this appellant as one of the two men who committed the robbery, in addition to the testimony of witness Jackson on this point above quoted, this witness was examined again on rebuttal and, speaking of this appellant, stated: "And I am positive this is the man."

The record discloses that after indictment this appellant was allowed bail and was released on bond. That he left the city, and when his case was afterwards called he failed to appear and answer. That a forfeiture was taken and an alias issued which was served upon him in Detroit, and he was brought back to trial by an Alabama officer sent to Detroit to apprehend and rearrest him. In this connection the question of flight of the accused was injected into the trial.

█ In a prosecution for crime it is permissible for the state to offer proof of the flight of the defendant from the neighborhood of the crime as a circumstance tending to show the guilt of the accused. But, where a crime has been committed, and proof of flight of the accused is offered, or evidence tending to show that the defendant absented himself from the community in which the alleged crime was committed, the probative force, or the value of the fact of flight, depends entirely upon the purpose of the defendant in thus absenting himself from the community. The question as to why the de-fendant left the community and remained away from it becomes a question for the jury; therefore, when the state offers proof tending to show that the defendant fled from the community, it is permissible under the rules of evidence to allow both the state and the defendant to show all those things which the defendant said and did when he left, and while away from the community, which tend to explain his flight, the quo animo thereof; whether the absence of the defendant was due to a sense of guilt, or his desire to avoid arrest, or through fear of arrest, or, on the other hand, whether his absence was due to other causes. "Flight" means, as a rule, when used in connection with a prosecution for crime, that the defendant absented himself from the community of the crime out of a sense of guilt, out of fear of, or to avoid, arrest, and, when flight is offered as a circumstance tending to show the guilt of defendant, the important question is as to whether, during his absence, the defendant is to be regarded as having been a fugitive from justice, or whether he is to be regarded as having been absent for an innocent and lawful purpose disassociated with any idea of the crime.

█ Pending the inquiry as to flight, several exceptions were reserved to the court's rulings upon the admission of evidence. In this connection it was proper to allow witness Jackson to testify that when this appellant's case was called for trial in the circuit court, he did not appear and answer. This was a matter within the knowledge of the witness, and a circumstance in connection with the inquiry. The exception on this point is without merit.

██ There is no merit in the exceptions reserved to the court's rulings upon the cross-examination of defendant's witnesses. Some of these questions were pertinent in order to show interest or bias of these witnesses and such as were not could have in no manner injuriously affected the substantial rights of the accused. The court is vested with much discretion in matters of this sort, and unless an abuse of such discretion injurious to defendant appears, the rulings of the trial court will not be disturbed. The accused was afforded an opportunity to explain his absence and undertook to do so by testifying: "I was never notified by my bondsmen to return here for this trial, and I have not lived at any place except Detroit, since detective Jackson went there with me in 1927."

The record shows this case was tried in the court below on October 23, 1930.

█ As stated hereinabove, the main inquiry upon this trial was one of fact as to the identity of this appellant as being one of the men who committed the robbery complained of. The evidence on this point was

in sharp conflict, and thus became a question for the jury to determine.

Charge 15 was properly refused. It is not the law that mere contradicting statements or declarations of a witness are sufficient to raise a reasonable doubt in the minds of the jury as to the truth of the testimony of a witness. The law is, if a witness willfully swears falsely as to a material fact such willful false swearing may authorize the jury to disregard the testimony of such witness.

The motion for a new trial was properly overruled. The grounds of said motion are predicated upon the several points of decision which arose upon the trial and have been hereinabove discussed.

We discover no error of a reversible nature in any ruling of the court. The record proper is regular and free from error also; therefore the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.