181 So. 128

**CHILES v. STATE.**

**7 Div. 289.**

Court of Appeals of Alabama.

March 8, 1938.

Rehearing Denied March 22, 1938.

Appeal from Circuit Court, Etowah County; J. H. Disque, Jr., Judge.

Jim Chiles, alias Childs, was convicted of grand larceny, and he appeals.

J. A. Conway, E. G. Pilcher, and Mc-Cord & McCord, all of Gadsden, for appellant.

A. A. Carmichael, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This is the second appeal in this case. Chiles v. State, 26 Ala.App. 358, 159 So. 700.

The defendant was convicted upon count 1 of the indictment; said indictment reads as follows: "The Grand Jury of said County charges that before the finding of this indictment Jim Chiles alias Jim Childs whose name is unknown to the Grand Jury otherwise than as stated feloniously took and carried away 2 bales of cotton, of the value of one hundred and fifteen dollars, the personal property of J. H. Watson, contrary to law." He was, as the law requires, sentenced to serve an indeterminate term of imprisonment in the penitentiary, and from the judgment of conviction this appeal was taken.

The first exception noted was reserved to the action of the court wherein the court asked the jury in qualifying them if either of the jurors was on the jury which tried the case of the State v. Louis Embry and Stacy Burroughs, tried together in March, 1934. From the objection interposed it is ascertained that said Embry and Burroughs had been connected with this same case, and had been tried and convicted in March, 1934. It was not only the province of the court, but it was the duty of the court, to provide as far as possible a fair and impartial jury to try this defendant; and hence the exception was not well taken. Certainly the defendant should want to know if any of the jurors, who were on the venire to try his case, had already passed upon it in a former trial. If such fact had been developed by the inquiry propounded, it would have afforded the defendant at bar the right or privilege to challenge such juror for cause. We are at a loss to understand how this action of the court could have tended to injuriously affect the substantial rights of the accused.

The facts attending the next exception to the court's ruling are stated in appellant's briefs and are as follows:

"The defendant was duly arraigned, a full venire of twelve jurors were drawn and selected and the trial duly entered upon. * * * and after the plea of not guilty was entered and the case stated to the jury by the Solicitor for the State and by Attorneys for the defendant, the prosecuting witness and alleged owner of the cotton stolen, J. H. Watson, was duly examined on direct and cross examination by the defendant.

"During said examination all twelve of the original veniremen sat in the jury box and heard the testimony. When this witness had finished his testimony the court adjourned for the day and reconvened on the following morning, at which time the court announced to the parties and to the attorneys and defendant as follows:

"'Gentlemen of counsel, Mr. Sandy Nears, one of the jurors, is having an attack of indigestion and says he was up all night long with it. He's been sick for an hour or an hour and a half. He says he is vomiting and fluttering in his heart. He hasn't had a doctor this morning. I have seen him. He really appears to be sick. A man in that condition is not in shape to hear evidence and weight it.'

"Thereupon after some interchange of propositions by the court and discussion by counsel, the court over objection of the defendant timely taken proceeded, first, to excuse the sick juror and discharge him from the venire. Second, directed a list to be made of all the jurors for the week, except the eleven in the box of the original venire. Third, required the State and the defendant to strike alternately one for the State and two for the defendant until all the names on said list were stricken, save one. Fourth, required the juror whose name was not stricken to fill the vacancy on the panel. Fifth, thereupon, without entering a mistrial or making any further order, resumed the trial of the case before the twelve jurors then in the box, and had the prosecuting witness to return to the witness stand and to again recount the facts and circumstances testified to by him on the preceding afternoon.

"This witness, Watson, the prosecutor, therefore testified to the entire transaction twice before eleven of the jurors trying

the case and once before the twelfth juror, who was substituted for Nears, the sick juror, who was excused.

"After the testimony of the prosecutor Watson the trial proceeded through to a final termination resulting in the conviction of the defendant."

The court had ample authority to pursue the course taken in this connection, and without amplification or further discussion of this question we shall only refer to and quote the statute section 8693 of the Code 1923, which reads as follows: "If before the jury retires one of them becomes so sick as to incapacitate him for the performance of his duty, or any other cause renders it necessary, in the opinion of the court, to discharge a juror, such juror may be discharged, another summoned in his place, and the trial commenced anew."

The corpus delicti, of the offense charged in count 1 of the indictment, was proven without dispute or conflict. In this connection the alleged injured party testified, in substance, that the two bales of cotton in question were his property and were of the value, at the time, of about $119. That on the night in question between dark and the next morning, the two bales of cotton, one marked with the letter "H" and the other "T," both letters having been placed on the respective bales in green paint, were taken from under a shed on his farm, adjacent to and in close proximity to his home, that he discovered this early the next morning and saw signs of the rolling of the cotton from the shed out to the highway, a short distance, and also saw the tracks of three or four men on the soft ground where the cotton was rolled, and on the following Tuesday he located the cotton in the Planter's Bonded Warehouse, in Talladega, Ala., some sixty or seventy miles from his home from which the cotton had been stolen. He identified the two bales of cotton as his own, whereupon it was turned over to him by the managers, L. J. Hubbard and E. D. Vaughn, of said warehouse.

Witness L. J. Hubbard, one of the managers of said warehouse, testified, in substance, that some time in December, 1933, he bought the two bales of cotton in question from this defendant, who at the time stated to him that his name was C. A. Walker, but who was afterwards identified as Jim Chiles, this appellant.

There were numerous exceptions reserved to the court's rulings on the testimony relating to the manner of identifying defendant and other incidents as to the payment by check for $119.30 to defendant for the cotton. These exceptions have been carefully considered, and we are of the opinion no merit appears in any of them. It would serve no good purpose to discuss these rulings of the court in detail and will therefore refrain from so doing.

■ The defendant relied upon an alibi as his defense, and in this connection offered the testimony of several witnesses which tended to show that he was at another and different place at the time the offense complained of was committed. Among others, the defendant introduced one Grover Blair, who testified, among other things: "I remember seeing Jim Chiles, the defendant, at my place of business. He came to make some arrangements with me about a trailer for a truck. He was there during that week, Friday I believe—is my best recollection. It was about the 22nd as well as I remember." Witness was then handed a book to refer to in order to refresh his recollection, and without objection testified: "I made some entries on my book. That is the transaction there that took place between me and Chiles (indicating a page on the book)," and was then permitted to testify as to what was contained on said page, without objection, to wit:

"Exhibit No. 1
Dec. 22

| J. C. Price | | |
| By Cash | | 2.00 |
| Jim Chiles | | |
| 1 trailer | | 15.00 |
| by cash | | 5.00 |
| Shad Mewburn | | |
| by cash | | 5.00 |
| Rube T. Love | By cash | 2.00 |
| Dec. 23 | | |
| Louis Johnson | | 5.00 |
| by cash | | |
| Dick Finley | | |
| work on wagon | | 8.15 |
| E. L. Paterson | | |
| Cr by hay | | 133#" |

Continuing, the witness stated: "I made that record at the time Jim Chiles was there on that date. This is the regular record that I keep there, with reference to my transactions with my customers. I made that record there on December 23rd, (Indicating on book), and that was a transaction between

me and Louis Johnson. I made that record on December 21st (Indicating) I put this down in this book on the day that the thing happened. I put it down as I go and not on another date. I recorded this Jim Chiles transaction sometime in the morning. That is in my handwriting. Jim Chiles was there at that time."

After having thus testified to the entries on the book, the defendant undertook to offer the book itself in evidence, but upon objection by the state, the court ruled it was not admissible, and this exception is strenuously insisted upon. The court was correct in not allowing the book in evidence. The defendant had the benefit of this witness' testimony and allowed the defendant unusual latitude in this connection, and we know of no rule of evidence that permits a party to bolster up the testimony of his witness in the manner insisted upon here. In support of this insistence we are cited our case of Taylor v. State, 21 Ala.App. 157, 105 So. 915. As we see it the Taylor Case, supra, is a direct authority to sustain the court in the ruling here complained of. Other authorities cited by appellant, where analogy appears, are of like import.

The court delivered a very excellent and able oral charge to the jury, which covers several pages of this transcript, and clearly and forcefully instructed the jury as to every phase of the law involved in this case.

The defendant reserved an exception to a portion of the oral charge, wherein the court stated: "And gentlemen, you are bound by the evidence in the case, and the reasonable and natural inferences that you as common sense men draw from that evidence." That there was no error in this is so clear it needs no discussion. The exception reserved was wholly without merit.

At the request of defendant the court gave a large number of special written charges, some thirty or forty.

Several charges were refused. Refused charge 5 was misleading and also invasive of the province of the jury. It was properly refused. Ex parte Davis et al., 184 Ala. 26, 63 So. 1010 and cases cited.

There is no necessity to discuss in detail the other refused charges. We find upon examination that in every instance where these charges contain correct propositions of law they were substantially and fairly covered by the oral charge of the court and by the charges given at request of the defendant.

From a careful and attentive consideration of the entire record, we are of the opinion that the defendant was accorded a fair and impartial trial and that no reversible error appears in any of the rulings of the court complained of. We are likewise of the opinion that the evidence adduced upon the trial was ample to sustain the verdict returned by the jury and to support the judgment of conviction from which this appeal was taken. Said judgment is affirmed.

Affirmed.