31 So.2d 670

**BROWN v. STATE.**

**6 Div. 238.**

Court of Appeals of Alabama.

June 18, 1946.

Rehearing Denied Aug. 1, 1946.

Reversed after Remandment March 25, 1947.

Rehearing Denied April 15, 1947.

George Rogers, Roderick Beddow and G. Ernest Jones, all of Birmingham, for appellant.

102

Wm. N. McQueen, Atty. Gen., and Jas. T. Hardin and Bernard F. Sykes, Asst. Attys. Gen., for the State.

CARR, Judge.

Appellant was tried in the court below on an indictment charging murder in the first degree. Upon his conviction for murder in the second degree his punishment was fixed at imprisonment in the State penitentiary for a term of twenty years.

A special plea of insanity gave leave for a wide latitude in the introduction of evidence.

In our view of the disposition of this appeal it appears that no good purpose can be gained by a full, detailed recitation of the tendencies of the evidence. Suffice it to say here that a jury question was posed by the evidence in the determination of the defendant's guilt under both the plea of not guilty and not guilty by reason of insanity.

Objections that increased to a great number were interposed by appellant's counsel during the cross examination of the accused and the witnesses introduced in his behalf. We have given careful study to these matters, and we are impressed that in no instance did the court violate the permissive practice of the latitude given in cross examination. Walters v. State, 24 Ala.App. 370, 135 So. 600; Crain v. State, 166 Ala. 1, 52 So. 31.

Appellant admittedly killed his brother-in-law. The evidence for the State tended to show that the defendant in company with one Goodwin, also a brother-in-law, visited the place of business of the deceased. The building, it appears, was used as a combined residence and restaurant. Members of the party, including the wife of the deceased, made some automobile trips, but finally reassembled at the front of the restaurant and residence. There the defendant and deceased engaged in a discussion which led to an argument over some family affairs. Following this conversation the deceased returned to the inside of his dwelling. Appellant lingered for ten or fifteen minutes on and near the premises and then got in a car. He drove a distance of some miles and returned with a shot gun. According to some of the State's witnesses, with gun in hand he walked around and near the house in which the deceased lived, while the latter was therein. After a lapse of about thirty minutes he reentered his automobile and backed it nearer to the front door of the restaurant. Within a short period of time the deceased came out of the front door and fired a rifle three or four times into the car in which the defendant was sit-

ting. Appellant was struck in the forehead. The evidence tended strongly to establish that the wound was caused by some piece of metal and not the bullet from the rifle fire. In any event the injury was not serious, but did cause considerable blood flow. The defendant got out or fell out of the automobile on the opposite side from the building and the deceased went back into the restaurant. There he left his rifle but forthwith came back out and went to the automobile behind which the appellant was crouched. There is a conflict in the evidence as to whether or not the deceased reappeared with a pistol in his hand. After some slight visual examination of the car, the deceased retraced his steps to his place of business and just as he was entering the front door appellant shot him.

We have set out this much of the tendencies of the evidence to give basis for an intelligent presentation of a question we now review.

 It appears that sometime during the interval of appellant's departure from the inside of the building and the fatal shooting, the deceased had two telephone conversations from his dwelling to the sheriff's office in Birmingham. Over timely objections and exceptions by appellant's counsel the trial court allowed the officer to relate the verbiage of each of these conversations.

According to the witness the first was:

"A. He said 'This is Wilkey', and he says 'I run a place on the Trussville Highway, and there is two men here in front of my stand with a shotgun threatening me. Can you send a car up here and get them?' I said 'Are those men there now', and he says 'They are driving off right now.' I said 'If they are driving off right now, it will be foolish for me to send a car up there because they wouldn't be there when the officers got there, but if they come back, if you will call me and my car isn't here I will get two other deputies to send up there.' "

The second, as set out in the record, is:

"A. He says 'Those two men are back here', and he says 'They are right in front of my stand' and he says 'One has a shotgun and is calling me all kinds of names',

and he says 'Get on out here, they are going to kill me.' I says 'Mr. Wilkey, I will send a car up there right away.' He says 'If you will, hurry up and get them up here,—I don't want to get hurt and I don't want to hurt or have to kill anybody.'

"Q. Was that all? A. I told him the car was leaving right then."

The Assistant Attorney General in brief attempts to justify these rulings on the theory that each of the above quoted conversations formed a part of the res gestae. Clearly in each of these instances what the deceased told the witness over the telephone could not be accepted in evidence against the hearsay rule.

Were the related occurrences a part of the res gestae? Our answer is in the negative. The term res gestae literally means "the thing done; transactions; essential circumstances surrounding the subject." Black's Law Dictionary, 3 Ed., p. 1539.

 "Acts or declarations, to be admissible under the principle of res gestæ, must be substantially contemporaneous with the main fact under consideration, and so closely connected with it as to illustrate its character." Dudley v. State, 185 Ala. 27, 64 So. 309, 310. See also, Roan v. State, 225 Ala. 428, 143 So. 454.

 We sometimes labor under the false premise that if a transaction occurs at or about the time of the happening of the main event, this and this alone brings the transaction within the res gestæ rule. This is not the measuring rod. The relation in point of time is not the sole criterion. The inquiry is: Was it so connected and associated with the chief transaction as to virtually and effectively become a part of it? Pope v. State, 174 Ala. 63, 57 So. 245; Livingston v. State, 7 Ala.App. 43, 61 So. 54.

The late Chief Justice Anderson, writing for the Supreme Court in Holland v. State, 162 Ala. 5, 50 So. 215, 217, observed:

"The conversation between the deceased and Annie Liggan before the killing, and while the defendant was absent from the house, was not admissible. Neither should the trial court have permitted Mrs. Taylor to testify that deceased told her, about five minutes before the difficulty, and before

the defendant had returned to the house, that 'Holland told him he was going after a gun and was coming back to kill him, and that he could not defend himself.' This was all hearsay evidence and was not a part of the res gestæ. State v. Stallings, 142 Ala.[112], 115, 38 So. 261; Fonville v. State, 91 Ala. 39, 8 So. 688. The trial court likewise erred in permitting Mrs. Taylor to testify that deceased said, 'Holland did not want him on account of the warrant, but for some other reason.' "

See also, Kirkland v. State, 21 Ala.App. 348, 108 So. 262.

█ The defendant firmly denied that he ever got out of the automobile with the shotgun until 'the immediate time of the killing. He testified, also, that he did not threaten the life of the deceased. We are unable to authorize the rulings in the instant inquiry on the premise that no harmful effects inured to the rights of the accused.

We next consider the written instructions that were refused to appellant.

█ Charge numbered 3 was before the Supreme Court in Amos v. State, 123 Ala. 50, 26 So. 524, and in Harris v. State, 123 Ala. 69, 26 So. 515. In each of these cases it was held to be error to refuse it. See also, Diamond v. State, 15 Ala.App. 33, 72 So. 558.

█ Refused Charge 5 was approved in Brown v. State, 118 Ala. 111, 23 So. 81; Wilson v. State, 243 Ala. 1, 8 So.2d 422; Veasey v. State, 20 Ala.App. 478, 103 So. 67; Bufford v. State, 23 Ala.App. 521, 128 So. 126. Its refusal in the instant case may be justified, it seems, on the authority of Davis v. State, 8 Ala.App. 147, 62 So. 1027.

Charge 8 is the same as refused Charge 3.

█ A charge identical with that of No. 10 was condemned in Jackson v. State, 177 Ala. 12, 59 So. 171. With some slight variation it was also disapproved in Stevenson v. State, 18 Ala.App. 174, 90 So. 140. We find, however, that this charge found approval in Black v. State, 5 Ala. App. 87, 59 So. 692; Bailey v. State, 11 Ala.App. 8, 65 So. 422; and Holland v. State, 24 Ala.App. 199, 132 So. 601.

Charge 15 has been considered by our appellate courts in a number of cases. In Deal v. State, 136 Ala. 52, 34 So. 23, the court held that it should have been given. See also, Ex parte Johnson, 183 Ala. 88, 63 So. 73; Bluett v. State, 151 Ala. 41, 44 So. 84; Cox v. State, 21 Ala.App. 87, 105 So. 700; Lovelady v. State, 24 Ala.App. 502, 136 So. 871; Holland v. State, 24 Ala.App. 199, 132 So. 601. In the following cases it did not find favor: Williams v. State, 144 Ala. 14, 40 So. 405, Pippin v. State, 197 Ala. 613, 73 So. 340; Johnson v. State, 8 Ala.App. 14, 62 So. 450.

We have, for the convenience of the bench and bar, given some of the history of the adjudication of the above charges. We do not find it necessary, however, to determine the propriety vel non of their refusal in the instant case, since we are convinced that each of them was fairly and substantially covered by either the oral charge of the court or given written instructions. Title 7, Sec. 273, Code 1940.

█ Charge 6 has a tendency to confuse. Freeland v. State, 26 Ala.App. 74, 153 So. 294.

█ In Harris v. State, 96 Ala. 24, 11 So. 255; Chaney v. State, 178 Ala. 44, 59 So. 604; and Cheney v. State, 172 Ala. 368, 55 So. 801, refused charge numbered 14 was accepted as applicable to the facts in those cases. The reasons for its approval therein have no adaptation to the evidence in the case at bar. We entertain the view that when, as in this case, the question of whether or not the accused was free from fault in bringing on the difficulty becomes a jury inquiry, the charge is properly denied. We have abundant authoritative support for this opinion. Gibson v. State, 126 Ala. 59, 28 So. 673; Gaston v. State, 161 Ala. 37, 49 So. 876; Forman v. State, 190 Ala. 22, 67 So. 583; Fowler v. State, 236 Ala. 87, 181 So. 266; Smith v. State, 243 Ala. 254, 11 So.2d 471. We will not laden this opinion by citing the great number of cases decided by this court in which the charge in question was disapproved.

█ This court in Griffin et al v. State, 28 Ala.App. 314, 184 So. 206, condemned a charge similar to Charge 16 in the case at bar. We approve that holding.

We hold, also, that Charge 20 was properly refused because of its argumentative tendencies. Welden v. State, 23 Ala. App. 85, 121 So. 4.

Refused instructions 23, A-1, and A-2 are general affirmative charges. Unquestionably their rejection is authorized under the evidence in this case.

The following charges give undue prominence to portions of the testimony or assume facts that are in conflict in the evidence: A-3, A-4, A-8, A-9, and A-10. Watts v. State, 8 Ala.App. 264, 63 So. 18; Continental Gin Co. v. Milbrat, 10 Ala.App. 351, 65 So. 424.

The propriety of the refusal of Charge 17 is settled in the recent case of Beavers v. State, 247 Ala. 181, 23 So.2d 604.

The cases are legion in which Charge 26 has been considered by our appellate courts. To review or cite all of them would add little value to this opinion and would unduly extend its length. It appears that in some of the early decisions of the Supreme Court the charge found sanction. See, Walker v. State, 153 Ala. 31, 45 So. 640; Simmons v. State, 158 Ala. 8, 48 So. 606; Roberson v. State, 175 Ala. 15, 57 So. 829. This court approved the charge in Kirkwood v. State, 3 Ala.App. 15, 57 So. 504.

In McClain v. State, 182 Ala. 67, 62 So. 241, 245, Justice Somerville, writing for the court, criticized the charge by saying: "A reasonable doubt not arising from the evidence, or not existing in the face of the whole evidence, is not a proper predicate for acquittal."

In Ex parte Davis et al., 184 Ala. 26, 63 So. 1010, the Supreme Court expressly overruled its holding in the Walker case, supra, in reference to this charge. A further treatment of the instruction in question was had in Moss v. State, 190 Ala. 14, 67 So. 431. It now appears with authoritative certainty that the charge no longer warrants approval. See, Robinson v. State, 243 Ala. 684, 11 So.2d 732; Wilson v. State, 243 Ala. 1, 8 So.2d 422; Daniels v. State, 243 Ala. 675, 11 So.2d 756; Mitchell v. State, 28 Ala.App. 119, 180 So. 119; Chiles v. State, 28 Ala.App. 156, 181 So. 128;

Gilbreath v. State, 23 Ala.App. 579, 129 So. 312.

Charges 28, A-11, and A-7 were each substantially covered by the oral charge and given written instructions.

In exact duplicate Charge A-14 was held without error to refuse in King v. State, 233 Ala. 198, 171 So. 254.

Our search discloses that in Keith v. State, 97 Ala. 32, 11 So. 914, Charge A-15 was held to correctly state the law. This view was explained in Goldsmith v. State, 105 Ala. 8, 16 So. 933, in which the court observed that the charge "should not be given except in cases where the evidence affirmatively shows that there was no duty upon the defendant to retreat, or when there was no reasonable mode of escape."

This same reasoning justified its refusal in Webb v. State, 100 Ala. 47, 14 So. 865. It was condemned for a similar defect in Howard v. State, 239 Ala. 274, 194 So. 857.

In Davis v. State, 214 Ala. 273, 107 So. 737, 741, the propriety for its refusal was based on: " * * * because it omitted to state that the belief of necessity to kill must be honestly entertained as well as reasonable." Clearly, it should not have been given in the instant case.

In the early case of Martin v. State, 90 Ala. 602, 8 So. 858, 24 Am.St.Rep. 844, a similar charge to that of A-16 was approved. However, this holding was expressly overruled in Williams v. State, 140 Ala. 10, 37 So. 228. Since the holding in the latter case, we find that the charge has been consistently disapproved. See, Matthews v. State, 22 Ala.App. 366, 115 So. 763; Holland v. State, 24 Ala.App. 199, 132 So. 601; Hill v. State, 25 Ala.App. 264, 144 So. 582.

The following refused charges have been held to be good. Neither of them was covered by either the oral or written charges. Each has application to the issues presented in the case. It is our conclusion that we must base error on their refusal. Number 11, Caldwell v. State, 160 Ala. 96, 49 So. 679; Glass v. State, 201 Ala. 441, 78 So. 819. Number A-6, Mizell v. State, 184 Ala. 16, 63 So. 1000.

██ Some of the rulings of the lower court indicate that he was under the impression that it is necessary to establish by the testimony all of the elements of self defense before it can be shown in evidence that the deceased had a bloodthirsty character. Whenever, by the evidence, a doubt is raised as to who was the aggressor in the difficulty, this proof becomes a matter of material inquiry and should be admitted. See, Lambert v. State, 205 Ala. 547, 88 So. 847.

There are a few more questions presented for review by the record in the case, but they are of such nature that they rarely occur in the progress of a trial. We do not think, therefore, that a treatment of them would serve any useful purpose.

For the errors indicated we order that the judgment of the primary court be reversed and the cause remanded.

Reversed and remanded.

### After Remandment.

The Supreme Court held that we were in error in concluding that the testimony set out in our original opinion was not a part of the res gestae of the main event and we should not have charged error on this basis. In supplemental brief, after remandment, counsel for appellant urges that we did not sufficiently state the circumstances in regard to the phone conversation and for this reason the question was not presented for full review to the Supreme Court. Out of deference to this insistence we now add to what we have already set out that the wife of the deceased testified that the first phone call to the sheriff's office was made about five minutes before the fatal shot was fired.

Ground 42½ of the motion for new trial is as follows:

"For that the court erred in the following matter: In the absence of the defendant and in the absence of the defendant's attorney of record and at a time before the defendant and the defendant's attorney of record appeared in court before the trial judge for the trial of his case and without any opportunity being given to the defendant to be present and without opportunity being given to the defendant to be present and without opportunity being given to the attorney of record for the defendant to be present and in violation of the statute in such cases made and provided and in violation of Rule 48 of the Circuit Court of Jefferson County, Alabama, at Birmingham, Alabama, duly adopted on February 7, 1936, the court did proceed to send for the trial jury box and did proceed to draw therefrom 24 cards containing the names of jurors from which the jury to try this defendant was to be selected and from which the jury to try this defendant was selected and when this defendant was brought from the jail and into the court room before the trial judge in this case and when the attorney of record for the defendant appeared with this defendant in the court room of the trial judge for the trial of this case, the names of the talesmen which the Judge had drawn from the jury box aforesaid were already listed on the sheets of paper which the defendant was required to use in striking and selecting his jury; and this defendant says that he was thereby compelled to join with the state in the selection of 12 jurors from the venire of 24 talesmen occupying the seats assigned to the 24 talesmen without having had opportunity to assure himself by his own observation or to have his attorney assure himself by his own presence and observation that the trial judge had in open court and without the selection of names and after shaking the trial jury box so that the cards therein should be well-mixed drawn said jury without a selection of names. And this defendant says that the procedure of the trial judge in and about the drawing of the aforesaid names from the trial jury box constituted a violation of this defendant's guarantee of due process of law contained in the Constitution of Alabama and in support of this ground of this motion, this defendant incorporates by reference thereto the rules of this court as spread upon the minutes of this court and particularly Rule 48 of the rules of this court adopted on the 7th day of February, 1936, and invokes this court's judicial knowledge of its own rules."

██ The evidence taken on the hearing of the motion sustains the averments just copied. It is to be noted, however, that ap-

pellant's attorney did not interpose any objections to the manner in which the names of the jurors were drawn and placed on the striking list. The complaint of this irregularity was first registered after conviction and then included as a ground of a motion to set aside the verdict of the jury and grant the defendant a new trial.

We entertain the view that by this delay the appellant must be charged with having waived the right to have the jury selected according to the strict provisions of the rule appertaining. The court procedure afforded ample opportunity to raise the question relative to the violation of the rule, and the failure to assert this right at the appropriate time must have the effect of a waiver. A contrary view would result in making the trial of causes more or less a game of chance.

We are resting our conclusion on the question of waiver without committing ourselves to a decision on the matter had timely objections been made. Johnson v. Williams, 244 Ala. 391, 13 So.2d 683; Gaston v. State, 179 Ala. 1, 60 So. 805.

■ In our original opinion we noted that some of the rulings of the trial judge indicated that he was under the erroneous impression that it is necessary to establish by the testimony all of the elements of self defense before the bloodthirsty and violent character of the deceased can be shown. Since we ordered a reversal of the judgment of conviction on stated grounds, we entertained the view that this suggestion would suffice as a guide for another trial. The status of the appeal now makes it necessary for us to make further inquiry into this matter and determine whether or not there was prejudicial error in any of these rulings.

The court disallowed an effort to establish this proof by four witnesses. At the time of this tender the evidence had been sufficiently developed to make a factual issue on who was the aggressor in the fatal difficulty. As a matter of fact, at this stage in the procedure evidence had been introduced touching practically all the circumstances of the killing, and the testimony that followed was in the main corroborative of this evidence.

"On all doubtful questions as to who was the aggressor, the violent or bloodthirsty character of the deceased, if such be his character, enters into the account." De Arman v. State, 71 Ala. 351.

The basis of the logical admissibility of this type of evidence is that it gives rise to a justification of more prompt and decisive action on the part of the accused when his assailant is known to be of bloodthirsty, violent or turbulent character.

In the case at bar, after the defendant had testified, four witnesses were allowed to give evidence that the character of the deceased was violent and turbulent. Only one of the recalled witnesses was among those whose testimony on this point was disallowed at the time we have indicated. The Assistant Attorney General, in supplemental brief, urges that if there was error in the first instance it was made harmless to the defendant by the introduction of the subsequent testimony. The case of Perkins v. State, 24 Ala.App. 138, 131 So. 461, is cited as an authority for this position. It will be noted that in the Perkins case the same witness was permitted to give the evidence sought on his redirect examination. This court held that under these circumstances, if there was error, it was cured.

In the case of Lambert v. State, 205 Ala. 547, 88 So. 847, this identical question was before the Supreme Court. The opinion illustrates the court's view of the important place this type of testimony has in the trial of a cause in which self defense is an issue. The court only discusses the matter as it related to the testimony of the witness Dill. We have the record before us and observe therein that before the defendant testified Mr. Dill was the only witness interrogated as to the character of the deceased. Following the examination of the accused, Mr. Dill was again recalled. The circumstances of his second apearance are clearly disclosed in the opinion. However, the record does show that three witnesses, not including Mr. Dill, were examined at this latter time and each gave evidence that the deceased was of bloodthirsty, turbulent character. It appears evident, therefore, that the court did not apply the rule of er-

108

ror without injury. For us to do so in the instant case we would not only be out of harmony with authoritative guidance, but we would be depriving the appellant of a substantial right.

See also, Eiland v. State, 52 Ala. 322; Green v. State, 143 Ala. 2, 39 So. 362; Morgan v. State, 20 Ala.App. 331, 102 So. 236.

It follows, therefore, that error to reverse must be predicated on the action of the trial court in sustaining the State's objections to questions which sought to establish proof of the matter in question.

■ Appellant's counsel, in oral argument and in brief, insists that the trial judge seriously prejudiced a fair trial of the defendant when on several occasions he "took over" the examination of the witnesses who testified to the good character of the accused. We have given careful consideration to these occurrences as they are reflected by the record. To go into a detailed treatment of them would entail much discussion. We do not see the need for this. It appears to us that the trial judge was sincere in his diligence to insure a full disclosure of all the facts and certainly there is no indication that he intended to be unfair to the interest of the defendant. However, it is true that the interruptions of the orderly procedure of the examinations of the witnesses did give rise to colloquies between the judge and appellant's counsel and occasioned statements by the trial court that should have been avoided. Our study of the record leads us to the conclusion that we would not be justified in predicating error upon any of these incidents, nor are we convinced that the cumulative effect of' these occurrences created an atmosphere of prejudice or harm that resulted in a deprivation to the defendant of a fair and impartial trial. We find no difficulty in distinguishing the case at bar from the case of Blue v. State, 246 Ala. 73, 19 So.2d 11.

There is no other question presented by the record that merits our discussion.

For error indicated the judgment of the lower court is ordered reversed and the cause is remanded.

Reversed and remanded.